UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

CASEY ANDREW CRAWFORD,

Defendant.

OPINION & ORDER

22-cr-602 (ER)

Ramos, D.J.:

  Casey Andrew Crawford was charged in a one-count indictment on November 2, 2022 with unlawfully reentering the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  Before the Court is Crawford's motion to dismiss the indictment for failure to state an offense, pursuant to Rule 12 of the Federal Rules of Criminal Procedure.  For the reasons set forth below, the motion is DENIED.

I.  BACKGROUND

  Crawford is a citizen of Jamaica who immigrated to the United States on July 2, 1980 as a lawful permanent resident.  Doc. 1 ¶ 3(a); Doc. 18-1 ¶ 5.  Between his entry into the United States and August 1988, Crawford was arrested and convicted several times for misdemeanor drug-related offenses under New York law.[1]  On August 1, 1988, Crawford was arrested in Norfolk, Virginia on drug-related charges and, on the same day, the then-existing Immigration and Naturalization Service ("INS"), initiated an investigation to determine whether Crawford was subject to deportation and issued a detainer to the Sheriff of Norfolk County Jail.  Doc. 17 at 5–6; Doc. 18-2 at 5; Doc. 18-4 at 2.  Crawford was received into INS custody pursuant to the detainer on August 16, 1988.  Doc. 18-2 at 5.  On November 8, 1988, INS issued an order to show cause, notice of hearing, and warrant for Crawford's arrest, charging him as being subject to

---

[1] The parties disagree as to the number of Crawford's convictions.  *Compare* Doc. 17 at 5 (five convictions), *with* Doc. 25 at 3 (six convictions).

deportation pursuant to the Immigration and Naturalization Act ("INA") based on his prior conviction for criminal possession of a controlled substance.  Doc. 25 at 3–4; Doc. 18 ¶ 6; Doc. 18-5.

On December 19, 1988, Crawford's immigration counsel, Max Frias, filed an application for a waiver of deportation pursuant to INA § 212(c) in the Immigration Court for Washington, DC.[2]  Doc. 25 at 4; Doc. 18 ¶ 7; Doc. 18-6.  Crawford was present at the initial deportation proceeding on December 27, 1988, at which the next hearing date was scheduled for March 27, 1989.  Doc. 25 at 4, 7; Gov. Ex. D; Gov. Ex. K at USAO_001409.  That same day, Crawford filled out an application for bail.  Doc. 25 at 4; Gov. Ex. B.  The form required him to note his current residence, which was an address in the Bronx, New York, where he had lived since 1985, and where he indicated that he would return if he was released from custody.  Doc. 25; Gov. Ex. B at 3.  Crawford's mother also resided at this address.  Doc. 25 at 4; Doc. 18-7 at 2.  Crawford was released from custody that same day and returned to the Bronx address.  *Id.*  Crawford's mother paid a $5,000 bond on December 30, 1988 to secure his release.  Doc. 25 at 4; Gov. Ex. C.

On January 10, 1989, Frias sent a letter to Crawford's New York address, reminding him that the next hearing date was scheduled for March 27, 1989.  Doc. 25 at 4; Gov. Ex. D.  The INS also sent Crawford's mother a letter providing notice of the March 27, 1989 hearing and directing her as obligor on the bond to cause Crawford to appear.  Doc. 25 at 5; Gov. Ex. E.

On March 15, 1989, Frias moved for change of venue of the deportation hearing from Virginia to New York.  Doc. 25 at 5; Doc. 18-8 at 2.  The motion was denied.  Doc. 17 at 7; Doc. 25 at 5.  Frias attended the March 27, 1989 hearing, but Crawford did not

---

[2] During the relevant period, INA § 212(c) "authorize[d] any permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver from deportation." *INS v. St. Cyr*, 533 U.S. 289, 295 (2001) (marks omitted).  The deportation proceeding was terminated if the relief was granted.  *See id.*

appear. *Id*. In his absence, the court ordered Crawford deported and denied his application for waiver of deportation. Doc. 25 at 5; Doc. 18-9 at 2. Attempting to contact Crawford again, Frias sent him another letter on March 28, 1989, informing him of the disposition of the deportation proceeding and noting that he had ten days to appeal the decision, by April 6, 1989. Doc. 25 at 5; Gov. Ex. F. Crawford did not respond to Frias.[3]

By letter dated June 1, 1989, INS sent a letter to Crawford's mother directing her to deliver Crawford or risk forfeiture of the bond. Doc. 25 at 5; Gov. Ex. G. The letter was delivered on June 3, 1989, as evidenced by Crawford's mother signing the return receipt mail card. *Id.* On June 15, 1989, INS sent another letter to Crawford's mother noting breach of the bond and that INS intended to forfeit the bond. Doc. 25 at 6; Gov. Ex. H.

On September 14, 1990, a warrant of deportation was issued, and Crawford was taken into INS custody. Doc. 25 at 6; Gov. Ex. I at USAO_001352–53. While in INS custody being prepared for deportation, Crawford was convicted in Virginia for criminal possession of cocaine. Doc. 17 at 7. He was turned over from INS custody to the police in Virginia and ultimately served a prison sentence for that offense. *Id*. Upon completion of the sentence on December 6, 1991, local authorities released Crawford, and he fled. Doc. 25 at 6; Gov. Ex. J at USAO_00260–61. INS agents found Crawford on January 10, 1992, took him into custody, and he was deported two weeks later, on January 23, 1992. *Id.*

Crawford returned to the United States on April 1, 1992, Doc. 18-1 ¶ 14, and was arrested in Virginia on July 23, 1992 for illegally reentering the United States, Doc. 18-2 at 5.

---

[3] In his motion, Crawford alleges that Frias failed to provide him with notice of the hearing date, time, and location; the denial of § 212(c) relief; the deportation order; and the time period to file an appeal. Doc. 17 at 10–11. Crawford contends that because he had not heard from Frias, he reasonably assumed that no hearing date was set. *Id.* at 13.

3

Crawford filed a motion to dismiss the reentry charge on the basis that Frias was ineffective as counsel during the underlying deportation proceedings because Frias failed to provide Crawford notice of the March 27, 1989 deportation hearing.  Doc. 25 at 6–7; Gov. Ex. K at USAO_001408–10.  The United States District Court for the Eastern District of Virginia held a hearing, and the motion was denied.[4]  *Id*.  After trial, a jury convicted Crawford of illegal reentry.  Gov. Ex. J at USAO_000261.  At sentencing, on March 9, 1993, Judge Robert E. Payne again ruled that Frias was not ineffective because Crawford had notice of the March 27, 1989 hearing.  Gov. Ex. K at USAO_001408–10.  Specifically, Judge Payne found that:  (1) Crawford was present for the hearing at which the March 27, 1989 hearing was scheduled; (2) Frias, sent him a letter reminding him of the hearing; and (3) INS sent notice of the hearing to his mother, with whom he lived.  *Id*.  Judge Payne sentenced Crawford to 77 months in prison.  *Id.* at USAO_001432; Doc. 25 at 7–8; Doc. 18-14 at 2–3.  After serving the 77-month sentence, Crawford was deported from the United States again on March 7, 2000.  Doc. 17 at 6–7; Doc. 25 at 8.

On July 14, 2018, Crawford was arrested in the Bronx, New York.  Doc. 1 ¶ 3(h).  Three months later, on October 17, 2018, a complaint was filed in the Southern District of New York charging Crawford with illegally reentering the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  Doc. 1.  Crawford was arrested on these charges on May 10, 2022.[5]  Doc. 3.

## II. PROCEDURAL HISTORY

On November 2, 2022, a grand jury issued an indictment charging Crawford with one count if illegal reentry into the United States after having been deported and without having obtained the express consent of the Attorney General of the United States,

---

[4] The Government contends that they took many steps to recover the transcripts of this hearing during Crawford's criminal trial in the Eastern District of Virginia, but neither the Court record nor the U.S. Attorney's Office record contained the relevant testimony.  Doc. 25 at 6 n.4.

[5] The record does not indicate the events occurring between Crawford's initial charges filed in this Court on October 17, 2018 and Crawford's arrest on the instant charges on May 10, 2022.

pursuant to 8 U.S.C. §§ 1326(a) and (b)(2).  Doc. 11.  Crawford filed the instant motion to dismiss on December 30, 2022, arguing that the March 1989 deportation order underlying this charge was fundamentally unfair.  Doc. 16.

## III.   LEGAL STANDARD

Federal Rule of Criminal Procedure 12 allows a defendant to move to dismiss an indictment for "a defect in the indictment or information; including . . . failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).  In determining a motion to dismiss, the Court accepts as true the facts alleged in the indictment.  *See United States v. Goldberg,* 756 F.2d 949, 950 (2d Cir. 1985).

Under 8 U.S.C. § 1326(d), a defendant seeking to challenge the validity of the underlying deportation order must show "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); *see United States v. Palomar-Santiago,* 141 S. Ct. 1615, 1620–21 (2021) (holding that a defendant must show each of the three elements of the collateral defense).  "Although the Supreme Court has not specifically delineated the procedural safeguards to be accorded aliens in deportation or removal hearings, it is well settled that the procedures employed must satisfy due process." *United States v. Gonzalez-Roque*, 301 F.3d 39, 45 (2d Cir. 2002) (citations omitted).

## IV.   DISCUSSION

Crawford argues that the indictment is based on a March 1989 deportation order that was fundamentally unfair due to the ineffective assistance of counsel—namely because Frias did not provide Crawford with notice of the date, time, and location of Crawford's deportation hearing, did not inform Crawford of the disposition of the immigration proceedings, nor informed Crawford of his right to appeal the disposition and the time within which he would need to do so.  Doc. 17 at 11.  Crawford argues the

5

Court should excuse him from the requirement to exhaust administrative remedies because of this purportedly ineffective assistance; find that he was deprived of the opportunity for judicial review; and hold that the deportation order was fundamentally unfair and resulted in prejudice. Doc. 17 at 10–19.

The Government argues that Crawford did not exhaust administrative remedies, was not deprived of an opportunity for judicial review, and has failed to show that the removal proceeding was fundamentally unfair. Doc. 25 at 9–13. Additionally, the Government argues that Crawford is collaterally estopped from making the same ineffective assistance claim in this proceeding which was already decided during the prior criminal proceedings against him in the Eastern District of Virginia. Doc. 25 at 13–14.

### a. 8 U.S.C. § 1326(d)
#### 1. *Exhaustion of Administrative Remedies*

To satisfy the first element of 8 U.S.C. § 1326(d), Crawford must show that he has exhausted all administrative remedies. 8 U.S.C. § 1326(d)(1). Where a defendant knowingly and voluntarily fails to exhaust administrative remedies, that defendant will be barred from challenging the validity of the underlying deportation order. *See United States v. Sosa*, 387 F.3d 131, 136–37 (2d Cir. 2004). Although Crawford did not appeal the March 1989 deportation order to the Board of Immigration Appeals, he argues that this requirement should be excused because he received ineffective assistance from his counsel, Frias, during those deportation proceedings, causing his waiver to be not knowing and intelligent. Doc. 17 at 10; *see Sosa*, 387 F.3d at 137 (holding the defendant was excused from exhaustion requirement because his waiver was not knowing and intelligent, as he was not informed of right to apply for § 212(c) relief in deportation proceedings). Specifically, Crawford alleges that Frias failed to inform him that: (1) a deportation hearing was scheduled for March 27, 1989; (2) his § 212(c) relief had been denied; (3) he was ordered deported at the March 27, 1989 hearing; and (4) he had ten days to appeal the deportation. Doc. 17 at 11.

The Second Circuit has held "ineffective assistance of counsel may be grounds to excuse the requirement of 8 U.S.C. § 1326(d)(1) that a defendant . . . must have exhausted administrative remedies in the immigration proceeding." *United States v. Cerna*, 603 F.3d 32, 35 (2d Cir. 2010) (excusing a defendant from the requirement to exhaust administrative remedies who had not received notice of the right to appeal and was unaware that he had been ordered deported because of ineffective counsel).

The record reflects, however, that Crawford *was* informed of the March 27, 1989 hearing, the deportation order, the denial of § 212(c) relief, and his right to appeal. According to the record, Crawford was present at a hearing held on December 27, 1988, at which the date for the March 27, 1989 hearing was set. Doc. 25 at 4, 7; Gov. Ex. D; Gov. Ex. K at USAO_1409–10. On this date, he filled out an application for bail which was granted, and he was released on a $5,000 bond paid for by his mother. *See* Gov. Ex. B, C. Thereafter, on January 10, 1989, Frias sent a letter to Crawford reminding him of the March 27, 1989 hearing date, including the time and the location of the hearing. *See* Gov. Ex. D. Crawford's mother was also informed of the hearing. As obligor of the bond, INS sent a letter to Crawford's mother directing her to cause Crawford to appear. Gov. Exs. E, G. After the March 27, 1989 hearing, Frias also sent Crawford notice of his right to appeal, indicating the time frame in which he was able to do so. *See* Doc. 25 at 5; Gov. Ex. F.

Accordingly, the record before the Court does not support a finding that Crawford received ineffective assistance from Frias; Crawford is not therefore excused from exhausting administrative remedies. On this basis alone, Crawford's motion to dismiss may be denied.

### 2. *Deprivation of Judicial Review*

In any event, the Court also finds that Crawford was not deprived of judicial review. To successfully argue the second prong of 8 U.S.C. § 1326(d), Crawford must show that he was "denied the opportunity for judicial review of his deportation order."

*Sosa,* 387 F.3d at 137.  "Where a waiver of the right to appeal is not knowing, an alien is deprived of the opportunity for judicial review." *United States v. Copeland*, 376 F.3d 61, 68 n.6 (2d Cir. 2004).  Crawford argues that due to Frias' ineffective assistance, his waiver was not knowing, and that he was therefore deprived of judicial review.  Doc. 17 at 10.  While it is true that "an invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid," *Sosa*, 387 F.3d 136, the Court has already concluded that Frias was not ineffective and that Crawford knowingly waived his right to appeal.  Crawford was therefore not deprived of judicial review of his deportation order.

### 3. *Fundamental Unfairness*

Crawford further fails to show that the entry of the deportation order was fundamentally unfair.  To meet this requirement, a plaintiff "must show both a fundamental procedural error and prejudice resulting from that error."  *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002).  It is recognized in the Second Circuit that when ineffective assistance of counsel is used to attack a deportation order, the defendant "must show (1) that a competent attorney would not have made the error; and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Williams,* 733 F.3d 448, 456 (2d Cir. 2013) (marks and citations omitted).  Crawford cannot satisfy the burden of showing both fundamental procedural error and prejudice.  Crawford relies on the ineffective assistance of counsel claim to show that a competent attorney would have informed him of the immigration proceedings held in March 1989.  But the Court has already concluded that Crawford had direct knowledge of the hearing and that Frias informed Crawford about the hearing and resultant deportation order.  Therefore, the Court finds no procedural error.

To show prejudice, a defendant must show that "defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have

8

occurred." *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002) (marks and citations omitted). Crawford relies on *Cerna*, in which a court held that "*where counsel failed to file an application for relief under § 212(c)*, an alien can show both fundamental procedural error and prejudice by establishing that (1) a competent attorney would have filed the application, (2) the alien was prima facie eligible for § 212(c) relief, and (3) the alien could have made a strong showing in support of his application." 603 F.3d at 41 (emphasis added). However, Crawford's reliance on *Cerna* is misplaced, as it is undisputed that Frias *did* file an application for § 212(c) relief. Doc. 18 ¶ 7; Doc. 18-6; Doc. 25 at 4. Because Frias was not ineffective, the entry of the deportation order was not fundamentally unfair.

### b. Collateral Estoppel

The Government argues that Crawford is collaterally estopped from challenging his deportation order. Doc. 25 at 13–14. The Court need not reach this issue, however, because even if Crawford were not collaterally estopped from challenging his deportation order, his challenge would be unsuccessful. [6]

---

[6] While no court in the Second Circuit appears to have applied the doctrine of collateral estoppel under these circumstances, sister circuits are split as to the issue. *Compare United States v. Smith Baltiher*, 424 F.3d 913, 920 (9th Cir. 2005) (declining to apply collateral estoppel); *United States v. Gallardo-Mendez*, 150 F.3d 1240, 1243–46 (10th Cir. 1998) (same); *United States v. Pelullo*, 14 F.3d 881, 889–97 (3d Cir. 1994) (same); *United States v. Harnage*, 976 F.2d 633, 634–36 (11th Cir. 1992) (same), *with Hernandez-Uribe v. United States*, 515 F.2d 20, 22 (8th Cir. 1975) (applying collateral estoppel); *United States v. Lara-Unzueta*, No. 19 Cr. 00552-001 (MTL), 2019 WL 5684197, at *6–7 (D. Ariz. Nov. 1, 2019) (same), *aff'd on other grounds*, 843 Fed. App'x 977 (9th Cir. 2021); *United States v. Lara-Unzueta*, No. 11 CR 495 (SDY), 2012 WL 2359350, at *3 (N.D. Ill. June 20, 2012) (same), *aff'd on other grounds*, 735 F.3d 954 (7th Cir. 2013). Moreover, the Second Circuit, in considering different circumstances, has suggested that it agrees with the reasoning of *Gallardo-Mendez, Smith Baltiher, Pelullo*, and *Harnage* that collateral estoppel should not be applied against a defendant in a criminal case. *United States v. Jones*, 43 F.4th 94, 102–03 (2d Cir. 2022).

## V. CONCLUSION

For the reasons set forth above, Crawford's motion is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 16.

It is SO ORDERED.

Dated: May 4, 2023
New York, New York

_____
EDGARDO RAMOS, U.S.D.J.